```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
JOSEPH M. DARCY,

                Plaintiff,

     -against-                              03 CV 6898 (KMW)(DCF)
                                                    ORDER

HON. JONATHAN LIPPMAN, individually and as
Chief Administrative Judge of the NYS Unified
Court System, HON. JUDY KLUGER, individually
and as Administrative Judge NYC Criminal Court,
HON. JUANITA BING-NEWTON, as successor to Judge
Kluger, HON. PATRICIA HENRY, individually and
as Executive Assistant to Judge Kluger, HON.
JOAN CAREY, individually and as Chief
Administrative Judge NYC Courts, MICHAEL COLODNER,
ESQ., individually and as Chief Counsel Unified
Court System, WILLIAM ETHERIDGE, individually and
as Chief Clerk NYC Criminal Court, DANIEL
ALESSANDRENO, individually and as First Deputy
Chief Clerk NYC Criminal Court, VINCENT MODICA,
successor to Daniel Alessandreno, JOHN DOE,
individually and as member of "Central
Administration" of NYC Criminal Court, JANE DOE,
individually and as a member of "Central
Administration" of NYC Criminal Court, THE UNIFIED
COURT SYSTEM, THE STATE OF NEW YORK,

                Defendants.
------------------------------------X
KIMBA M. WOOD, U.S.D.J.:
```

Joseph M. Darcy ("Plaintiff") has filed a pro se complaint against his employer, the New York State Unified Court System, ("UCS") and a number of supervisors (collectively, the "Defendants"), alleging that his October 2002 transfer from a position on Staten Island to one in Brooklyn violated Title I of

1

the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12112; the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. §§ 621-634; the New York State Human Rights Law, N.Y. Exec. Law §§ 290-301; the New York City Human Rights Law, N.Y. City Admin. Code § 8-107; and New York common law.  On November 10, 2003, Defendants moved to dismiss Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Magistrate Judge Debra C. Freeman issued a Report and Recommendation (the "Report") on November 1, 2004, familiarity with which is assumed, recommending that the Court grant the portion of Defendants' motion to dismiss pertaining to his federal claims and hold in abeyance portions pertaining to state law, pending a possible motion to amend the Complaint to assert an additional federal claim.  For the reasons set forth below, the Court adopts the Report in its entirety.

## I.  Background[1]

Plaintiff has worked for UCS since May 12, 1977, almost exclusively in the criminal court system.  Compl. ¶¶ 13-14.  In March 1998, Plaintiff requested and received a transfer from

---

[1] The facts as set forth in this order have been taken from the Complaint and are assumed to be true in accordance with the legal standard of review on a motion to dismiss.  See Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 88 (2d Cir. 1999), cert. denied, 528 U.S. 1188 (2000).

Brooklyn to Staten Island, where he worked as Deputy Chief Clerk. Compl. ¶ 17; Ex. K.  In August of 2000, Plaintiff took a leave of absence following his hospitalization and diagnosis of systolic heart failure in its most severe form.  Compl. ¶¶ 22-24.  He remained on UCS's payroll throughout his hospitalization and recovery.

When Plaintiff returned to work on November 1, 2002, William Etheridge ("Etheridge"), Chief Clerk of the Criminal Court, asked him if he would resume work on an online manual for court clerks -- a project that he had worked on prior to his leave of absence. Compl. ¶¶ 24-25.  Plaintiff, who was concerned about the amount of time the project would require him to work in Manhattan, agreed, provided that: (1) he would remain assigned to the court on Staten Island; (2) he would divide his work time between Manhattan and Staten Island; (3) all of his official records would be processed by the court on Staten Island; and (4) he would return to his prior duties on Staten Island when the project was complete.  Comp. ¶¶ 25-26.  Plaintiff finished the majority of his work on the project in October 2002.  Compl. ¶ 30.

During the first week of October 2002, Etheridge gave Plaintiff permission to return to Staten Island full time.

3

Compl. ¶ 30.  At that time, however, Etheridge informed Plaintiff that -- notwithstanding the conditions Plaintiff and Etheridge agreed upon -- he might be transferred to Brooklyn because of possible broader personnel reassignments.  Compl. ¶ 30.  Plaintiff was officially transferred to Brooklyn on October 28, 2002.  Compl. ¶ 32.  Plaintiff alleges that although he was assigned to be the Supervisor of the Clerk's Office in Brooklyn, his responsibilities did not compare to those on Staten Island.  Compl. ¶ 39.

On October 10, 2002, Plaintiff requested that he be transferred back to Staten Island; he argued that the daily commute to Brooklyn aggravated his heart condition and that a transfer would be a reasonable accommodation under the ADA.  Compl. ¶ 33.  On or about October 16, 2002, Plaintiff notified Etheridge and Kluger that, in his view, failing to respond to his request for a reasonable accommodation was a violation of federal antidiscrimination law and would constitute discrimination on the basis of disability and age.  Compl. ¶ 34.  Regardless, no one responded to Plaintiff's request.  Compl. ¶ 33.  On October 18, 2002, Plaintiff wrote a letter to Judge Joan Carey ("Carey"), Chief Administrative Judge of the New York City Courts, offering to accept a demotion if it meant he could return to Staten

4

Island.  Compl. ¶ 35.  Plaintiff alleges that he received no response to this letter.  Compl. ¶ 35.

On October 28, 2002, and November 25, 2002, Plaintiff filed two separate grievances with Carey's office regarding his transfer to Brooklyn, both of which UCS summarily denied.  Compl. ¶¶ 38, 40; Exs. N-P.  Plaintiff's appeal of those denials was similarly unsuccessful.  Compl. ¶ 42; Exh. S.  On October 29, 2002, Plaintiff filed a Claim of Discriminatory Treatment with the UCS Office of the Special Inspector General for Bias Matters; it seems that the office did not issue a formal response to the claim.  Compl. ¶ 44, Exh. T.

On January 27, 2003, Plaintiff filed a complaint with the U.S. Equal Employment Opportunity Commission (the "EEOC").  Compl. ¶ 46; Exh. BB.  On June 16, 2003, the EEOC informed him that, in its view, no evidence supported his claims of discrimination based on disability or age.  Compl. ¶ 46; Exh. BB.  Plaintiff received a transfer back to Staten Island on March 3, 2003, although he alleges that it was contingent upon accepting a position subordinate to a less senior Associate Court Clerk.  Compl. ¶ 95.  He initiated this lawsuit on September 9, 2003.

On November 10, 2003, Defendants moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6) on the grounds that: (1) the Eleventh Amendment bars Plaintiff's claims against the State of New York, the UCS, and the supervisors in their official capacities; (2) individuals cannot be held personally liable under the ADA or the ADEA; (3) the Court should decline to exercise supplemental jurisdiction over Plaintiff's pendent state and city law claims; (4) Plaintiff's claims for injunctive relief are moot; (5) Plaintiff has failed to state a New York State Human Rights Law claim; (6) Defendants are entitled to qualified immunity; (7) Plaintiff has failed to exhaust his administrative remedies with respect to his contract claim; and (8) Plaintiff has failed to state a claim for emotional distress.

    Magistrate Judge Freeman recommended that the Court grant Defendants' motion to dismiss Plaintiff's ADA and ADEA claims and hold the portion directed toward Plaintiff's state-law claims in abeyance.  Report 2.  Plaintiff timely filed objections to the Report.

**II.  Discussion**

    Although Plaintiff's objections are somewhat summary, the Court has considered them de novo.  See 28 U.S.C. § 636(b)(1);

Fed. R. Civ. Pro. 72(b).  In reaching its decision, the Court carefully considered the Report and arguments contained therein, as well as the briefs and objections that the parties have submitted.

Plaintiff objects primarily to the Report's conclusion that the doctrine of sovereign immunity blocks his ADA and ADEA claims.  He argues mainly from an equitable standpoint, claiming that "[n]ot one ADA or ADEA claim involving a sovereign revolves around the absolute refusal of the sovereign or its agents to even discuss a legally made request."  Pl.'s Objections 1.[2]

It is well settled that a citizen of a state may not sue a state or its agencies in federal court unless Congress has abrogated the state's sovereign immunity with respect to the claims at issue or the state has waived its immunity from suit.  U.S. Const. amend. XI; Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); Huang v. Johnson, 251 F.3d 65, 69-70 (2d Cir. 2001).  It is equally well settled that Congress has not abrogated the states' immunity under either Title I of the ADA or the ADEA.  Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 368-69 (2001) (holding that Congress did not validly

---

[2] Plaintiff submitted his objections in the form of a two-page letter.  The Court has added pagination to the letter for ease of reference.

abrogate state sovereign immunity on the basis of Title I of the ADA); Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 91 (2000) (holding that Congress did not validly abrogate state sovereign immunity on the basis of the ADEA). Likewise, New York State has not waived its immunity from suits seeking either monetary or injunctive relief in federal court. N.Y. Court of Claims Act § 8 (McKinney 2006); Cory v. White, 457 U.S. 85, 90 (1982) ("It would be a novel proposition indeed that the Eleventh Amendment does not bar a suit to enjoin the state itself simply because no money judgment is sought."); McLaurin v. Pittari, No. 91 Civ. 4143, 1994 WL 263422, at *4, 1994 U.S. Dist. LEXIS 7884, at *15-16 (S.D.N.Y. June 13, 1994) (noting that New York State has waived its sovereign immunity only in actions for damages brought in the New York Court of Claims); Bernadine v. City of New York, 62 N.E.2d 604, 605 (N.Y. 1945).

In Plaintiff's view, the Report erred in concluding that Executive Order 96 failed to waive sovereign immunity and in failing to consider whether Article 25.3[3] of the UCS's Collective

---

[3] Article 25.3 of the Collective Bargaining Agreement states: "The State and the Union agree that nothing in this Agreement prevents the State from making reasonable accommodation for a disabled employee when such is required pursuant to the American with Disabilities Act." Pl.'s Objections 1. Plaintiff attached a copy of Executive Order 96 to his Answer to Motion to Dismiss as Exhibit A.

8

Bargaining Agreement does so.  Pl.'s Objections 1.  Neither document, however, contains language that clearly and explicitly waives immunity.  These documents are therefore insufficient to support a determination that New York has voluntarily waived its immunity from suit.  See, e.g., College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 678 (1999) (holding that a waiver will be found only "where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction"); New Holland Vill. Condo. v. DeStaso Enters. Ltd., 139 F. Supp. 2d 499, 502 (S.D.N.Y. 2001).  As such, the Report correctly concludes that the Court lacks subject-matter jurisdiction over Plaintiff's ADA and ADEA claims against New York and UCS (which is an arm of the State of New York).

The Court similarly lacks subject-matter jurisdiction over Plaintiff's ADA and ADEA claims against the individual defendants.  The individual defendants -- who are either administrative judges or employees of UCS -- are entitled to immunity from money damages under the Eleventh Amendment and are absolutely shielded from liability by the ADA and the ADEA.  Huang, 251 F.3d at 69-70 ("Because state immunity extends to officers who act on behalf of the state . . . where the state

9

itself is the real party in interest, 'the 14th Amendment generally bars federal court jurisdiction over actions against state officials acting in their official capacities.") (citing P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 142-47 (1993); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-02 (1984)); Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); see, e.g., Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998) (concluding that Congress intended to limit Title VII liability to employer-entities); Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) (concluding that the ADA does not provide for individual liability); Roddini v. C.U.N.Y., No. 02 Civ. 4640, 2003 WL 435981, at *4, 2003 U.S. Dist. LEXIS 2549, *14 (S.D.N.Y. Feb. 21, 2003) (collecting cases and concluding that "[b]ecause the ADEA was modeled after Title VII, the Court of Appeals and district courts in this Circuit subsequently extended the rule to encompass the ADEA as well."). Given that the ADA and the ADEA provide a shield from individual liability,

10

Plaintiff's argument that Defendants did not act in an "objectively reasonable" manner is beside the point.  Pl.'s Objections 1.  Plaintiff's ADA and ADEA claims against the State of New York, UCS, and the individual defendants are therefore dismissed with prejudice.

Given that the Court has dismissed Plaintiff's ADA and ADEA claims, it would ordinarily be appropriate to decline to exercise supplemental jurisdiction.  28 U.S.C. § 1367(c)(3).  But, as the Report points out, there is a chance that Plaintiff intended to assert a claim under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-797b, which, if properly asserted, could support supplemental jurisdiction over the state claims.  Because "pro se litigants generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest,'" Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)), the Court adopts the Report's recommendation that Plaintiff be given leave to amend his Complaint to set forth a claim under the Rehabilitation Act.  If no such motion is forthcoming within thirty (30) days of this Order, the Court will dismiss the Complaint in its entirety.

1996)), the Court adopts the Report's recommendation that Plaintiff be given leave to amend his Complaint to set forth a claim under the Rehabilitation Act. If no such motion is forthcoming within thirty (30) days of this Order, the Court will dismiss the Complaint in its entirety.

### III. Conclusion

Accordingly, after careful consideration and de novo review, the Court adopts Magistrate Judge Freeman's thorough and well-reasoned report. Plaintiff's ADA and ADEA claims are dismissed, with prejudice. Defendants' motion to dismiss the state law claims is held in abeyance. Plaintiff may file an Amended Complaint within thirty (30) days of this Order to allege a claim under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-797b. If Plaintiff does not file an Amended Complaint, the Court will dismiss Plaintiff's state law claims with prejudice, as well.

```
         SO ORDERED
DATED:   New York, New York
         December 19, 2006
```

_Kimba M. Wood_
Kimba M. Wood
United States District Judge

12